**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRANDON MCNAIR,

          Plaintiff,

    v.                                                              9:25-cv-01135 (AMN/MJK)

COUNTY OF ONEIDA; COUNTY OF
ALBANY; ROBERT MACIOL, SHERIFF
OF ONEIDA COUNTY; MARK
KINDERMAN, ONEIDA COUNTY CHIEF
OF CORRECTIONS; CRAIG D. APPLE,
SR., SHERIFF OF ALBANY COUNTY;
SERGEANT "A." PATERNOSTER;
CAPTAIN "C." SMITH; SERGEANT "B."
CHAPMAN; OFFICER "HOLBERT";
OFFICER "SPIELMANN"; LIEUTENANT
ANTHONY TORRISI; OFFICER MERZUK
HOZANOVIC; OFFICER JENNIFER
PEASE; OFFICER ALIJA CAPRA;
OFFICER ANTHONY GIAMBATTISTA;
INVESTIGATOR MILLER, ONEIDA
COUNTY SHERIFF'S DEPARTMENT;
JOHN DOE ONEIDA COUNTY SERT
OFFICERS #1-20; and RICHARD ROE
ALBANY COUNTY CERT OFFICERS #1-
20,

          Defendants.

---

**APPEARANCES:**                                              OF COUNSEL:

**KAUFMAN, LIEB, LEBOWITZ & FRICK LLP**      **DOUGLAS EDWARD LIEB, ESQ.**
18 East 48th Street – Suite 802                              **ALYSSA D. ISIDORIDY, ESQ.**
New York, New York 10017
*Attorneys for Plaintiff*

**ROTH & ROTH LLP**                                          **ELLIOT DOLBY SHIELDS, ESQ.**
192 Lexington Avenue – Suite 802
New York, New York 10016
*Attorneys for Plaintiff*

1

**MURPHY BURNS GROUDINE LLP**
407 Albany Shaker Road
Loudonville, New York 12211
*Attorneys for Defendants and Cross Defendants*
*County of Oneida, Maciol, Kinderman, Paternoster,*
*Smith, Chapman, Holbert, Spielmann, Hozanovic,*
*Pease, Capra, Giambattista, and Miller*

**STEPHEN M. GROUDINE, ESQ.**

**GOLDBERG SEGALLA, LLP**
8 Southwoods Boulevard – Suite 300
Albany, New York 12211
*Attorneys for Defendants and Cross Claimants*
*County of Albany, Apple, and Torrisi*

**JONATHAN M. BERNSTEIN, ESQ.**

**NO APPEARANCES:**

**JOHN DOE ONEIDA COUNTY OFFICERS #1-20**
*Defendants and Cross Defendants*

**RICHARD ROE ALBANY COUNTY OFFICERS #1-20**
*Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On August 21, 2025, plaintiff Brandon McNair commenced this action against defendants (i) County of Oneida ("Oneida County"), Oneida County Sheriff Robert Maciol ("Sheriff Maciol"), Oneida County Chief of Corrections Mark Kinderman ("Chief Kinderman"), Oneida County Captain C. Smith ("Captain Smith"), Oneida County Sergeant B. Chapman ("Sergeant Chapman"), Oneida County Sergeant A. Paternoster ("Sergeant Paternoster"), Oneida County Officer Holbert ("Officer Holbert"), Oneida County Officer Spielmann ("Officer Spielmann"), Oneida County Officer Merzuk Hozanovic ("Officer Hozanovic"), Oneida County Officer Jennifer Pease ("Officer Pease"), Oneida County Officer Alija Capra ("Officer Capra"), Oneida County Officer Anthony Giambattista ("Officer Giambattista"), Oneida County Investigator Miller

2

("Investigator Miller") (collectively, the "Oneida County Defendants"); (ii) County of Albany ("Albany County"), Albany County Sheriff Craig D. Apple, Sr. ("Sheriff Apple"), and Albany County Lieutenant Anthony Torrisi ("Lieutenant Torrisi") (collectively, the "Albany County Defendants"); and (iii) twenty John Doe Oneida County Officers and twenty Richard Roe Albany County Officers (collectively, the "Doe Defendants" and, together with the Oneida County Defendants and the Albany County Defendants, "Defendants"), in connection with alleged events arising from an incident at the Oneida County Correctional Facility ("OCCF") on August 20, 2024. Dkt. No. 1 ("Complaint").

Presently before the Court is the Oneida County Defendants' partial motion to dismiss. Dkt. No. 12 ("Motion"); *see also* Dkt. Nos. 16-17.  For the reasons set forth below, the Motion is granted in part and denied in part.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties and Relevant Entities

Plaintiff is a black man and resident of New York State.  Dkt. No. 1 at ¶ 15.  In August 2024, he was thirty-three years old and a pretrial detainee at the OCCF.  *Id.* at ¶ 2.

Oneida County is a municipal corporation organized under New York State law.  *Id.* at ¶ 16. Defendant Maciol is the Oneida County Sheriff.  *Id.* at ¶ 18.  Oneida County operates the Oneida County Sheriff's Office ("OSCO") and the OCCF.  *Id.* at ¶ 16.  Chief Kinderman is the Chief

3

Deputy of Corrections for the OSCO. *Id.* at ¶ 19. Members of the OSCO staff the OCCF, including the Sheriff's Emergency Response Team ("SERT"). *Id.* at ¶¶ 1, 16. The twenty John Doe Defendants are SERT officers, *id.* at ¶ 32, as are Sergeants Paternoster and Chapman, *id.* at ¶¶ 21, 23. Captain Smith and Officers Capra, Giambattista, Holbert, Hozanovic, Pease, and Spielmann are correction officers with the OSCO. *Id.* at ¶¶ 22, 24-25, 27-30. Investigator Miller is an investigator with the OSCO. *Id.* at ¶ 31.

Albany County is a municipal corporation organized under New York State law. *Id.* at ¶ 17. Defendant Apple is the Albany County Sheriff. *Id.* at ¶ 20. Albany County operates the Albany County Sheriff's Office, which staffs a Correctional Emergency Response Team ("CERT"). *Id.* at ¶¶ 17, 20. The twenty Richard Roe Defendants are CERT officers, *id.* at ¶ 33, as is Lieutenant Torrisi, *id.* at ¶ 26.

**B. Plaintiff's Factual Allegations**

Broadly, Plaintiff alleges that members of the Albany County Sheriff's Office traveled to Oneida County, where they joined members of the Oneida County Sheriff's Office and, together, conducted "a coordinated, racially targeted jail-wide raid" at the OCCF on August 20, 2024. *Id.* at ¶ 1. Plaintiff asserts that during this raid, Defendants "battered" him and "scores of other incarcerated individuals—overwhelmingly Black or Latino—who were already restrained, compliant, and handcuffed." *Id.*

More specifically, according to Plaintiff, Oneida County's Chief Kinderman contacted Albany County's Sheriff Apple on or about August 18, 2024 and requested that Albany County's CERT team be sent to the OCCF, where the CERT team would join Oneida County's SERT team to carry out the joint operation. *Id.* at ¶ 35. Sheriff Maciol allegedly "approved and authorized" Chief Kinderman's decision to utilize Albany County personnel for the joint operation. *Id.* at ¶ 18.

Thereafter, CERT officers arrived at the OCCF in the early morning of August 20, 2024. *Id.* at ¶ 37. Plaintiff alleges that Chief Kinderman briefed the assembled teams. *Id.* The plan was purportedly for the CERT team to "take the lead entering each housing unit and making first contact with incarcerated individuals, while [the SERT team] would provide support (securing perimeters, operating cameras, and opening cell doors on [the CERT team]'s command)." *Id.* SERT officers were allegedly ordered not to interfere with the actions of the CERT officers, who were purportedly given "free rein in handling incarcerated individuals" and would show these individuals "how it's done[.]" *Id.*

Plaintiff alleges that at approximately 9:30 a.m. on August 20, 2024, the CERT and SERT teams commenced the operation. *Id.* at ¶ 38. Over the next two to three hours, the teams "moved in formation, shouting commands, and simultaneously breaching cells" in the OCCF's general population Pods 5, 6, 7, and 8, as well as the protective-custody Pod 4. *Id.* Plaintiff alleges that Albany County's CERT officers took the lead, even though they were not wearing body cameras and had no canines present to detect contraband, decisions that Sheriff Maciol allegedly approved and authorized. *Id.* at ¶¶ 38, 18. Plaintiff alleges that as the CERT officers entered each Pod, they ordered incarcerated individuals to get down on the ground or face the wall. *Id.* at ¶ 39. Despite compliance, the CERT officers nonetheless proceeded to handcuff and beat numerous individuals, including by punching, kicking, striking, and pepper spraying restrained incarcerated individuals directly in the face and eyes. *Id.* Plaintiff alleges that this conduct "focus[ed] on Pods 5, 7, 8, and 4, which overwhelmingly house Black and Latino incarcerated individuals (Pod 6, which is overwhelmingly white due to privileged placement programs, was mostly spared violence)." *Id.* Plaintiff contends that throughout the operation, Oneida County personnel "either looked on or intentionally angled their body-worn cameras away to avoid recording the abuse." *Id.*

At approximately 11:00 a.m., after raiding "two or three general population pods with extreme violence," the CERT and SERT teams gained access "into a special housing unit housing vulnerable and medically disadvantaged detainees[,]" including Plaintiff in Pod 4. *Id.* at ¶ 40. Plaintiff, who was recovering from a shoulder dislocation, was purportedly seized by the collar of his shirt, without provocation, and ordered to sit on the ground with his hands beneath him. *Id.* at ¶ 42. CERT officers proceeded to drag Plaintiff by his neck and shirt, slammed his face into the floor, and one or more of them ground Plaintiff's face into the floor while driving a knee into the back of his neck. *Id.* Plaintiff alleges that although he remained compliant, he was nonetheless subsequently handcuffed and further beaten. *Id.* at ¶ 43.

During this time, Sergeant Paternoster purportedly appeared, wearing a body worn camera, but did not intervene. *Id.* at ¶ 46. Instead, Sergeant Paternoster allegedly "deliberately pivoted his camera away from the assault and backed out of view, intentionally failing to capture the violence[.]" *Id.* Officer Holbert was also allegedly present for the violence, and exclaimed "[g]uys, he's got cuffs on[,]" but similarly failed to intervene. *Id.* at ¶ 47. Officer Holbert proceeded to hand a canister of pepper spray to the CERT officers, who then deployed it so heavily in the closed cell that even they recoiled and coughed. *Id.*

Plaintiff alleges numerous physical and mental injuries as a result of the conduct to which he was subjected. *See, e.g., id.* at ¶¶ 50, 64. Plaintiff alleges that shortly following the incident he made comments to various correction staff, including Sergeant Paternoster, to the effect of "[t]hey let Albany beat me for no reason" and "they just beat me up . . . they did that for no reason." *Id.* at ¶¶ 54, 56. Plaintiff alleges that body worn camera footage captures portions of his injuries, his statements, as well as Chief Kinderman's presence as Plaintiff was transported past him in a wheelchair. *Id.* at ¶¶ 56-57, 85. Plaintiff claims that at approximately 1:42 p.m. on August 20,

2024, he collapsed in Pod 4 as a result of not receiving medical care despite having requested it. *Id.* at ¶¶ 58-59.

According to Plaintiff, dozens of incarcerated individuals submitted grievances and complaints in the days after the August 20, 2024 raid. *See, e.g., id.* at ¶ 78. A non-party OCCF lieutenant purportedly stated in an email to Chief Kinderman that McNair and a number of other incarcerated individuals looked terrible that day and even worse the next day. *Id.* at ¶ 77.

Plaintiff contends that in the days and weeks following the incident, he continued to be denied medical care, including certain of his prescriptions. *See, e.g., id.* at ¶¶ 63, 65, 68. Prior to Plaintiff's release in January 2025, he remained in protective custody and suffered near-daily panic attacks. *Id.* at ¶ 71.

Plaintiff alleges that, instead of properly addressing the many grievances and complaints following the August 20, 2024 raid, Oneida County officials covered up the misconduct. *See, e.g., id.* at ¶ 80. For example, Oneida County Sheriff's officials published a Facebook post that featured a photograph of several dozen Oneida County and Albany County personnel, did not mention any violence, and instead stated: "Thank you to Albany County Sheriff Craig Apple and the members of his Emergency Response Team for assisting . . . with a facility-wide sweep . . . [we] were able to conduct a thorough and effective sweep and get the facility back to normal operations quickly." *Id.* at ¶ 81 (alterations in original); *see also id.* at ¶ 10. Within the OCCF, Officers Capra and Giambattista "went through the housing units and issued a chilling warning to the incarcerated individuals: 'You better relax before we go get Albany County again.'" *Id.* at ¶ 82. In response to inquiries by the New York State Commission of Correction and the New York State Attorney General's Office, Chief Kinderman purportedly "submitted written statements filled with demonstrable falsehoods[,]" including "that 'only minimal force was used,' that Plaintiff 'was not

7

cuffed,' that the incident was a routine shakedown, [ ] that body-camera footage proved Plaintiff was resisting[,]" and "that Plaintiff received prompt medical care and was fine, 'aside from a minor abrasion.'" *Id.* at ¶ 84.

### C. Plaintiff's Legal Claims

Based on Plaintiff's factual allegations, he asserts eleven legal claims against numerous Defendants:[1] pursuant to 42 U.S.C. § 1983 ("Section 1983"), (i) excessive force, in violation of the Fourteenth Amendment *id.* at ¶¶ 153-60; (ii) failure to intervene, in violation of the Fourteenth Amendment, *id.* at ¶¶ 161-66; (iii) retaliation, in violation of the First Amendment, *id.* at ¶¶ 167-71; (iv) deliberate indifference to serious medical needs, in violation of the Fourteenth Amendment, *id.* at ¶¶ 184-91; (v) pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)"), conspiracy to violate civil rights, in violation of the Fourteenth Amendment, *id.* at ¶¶ 172-77; (vi) pursuant to 42 U.S.C. § 1986 ("Section 1986"), neglect to prevent conspiracy, *id.* at ¶¶ 178-83; (vii) pursuant to the Americans with Disabilities Act ("ADA"), violations of Title II, *id.* at ¶¶ 207-12; (viii) pursuant to the Rehabilitation Act, violations of Section 504, *id.* at ¶¶ 213-20; and, pursuant to New York State law, (ix) assault, *id.* at ¶¶ 192-95; (x) battery, *id.* at ¶¶ 196-99; and (xi) intentional inflection of emotional distress ("IIED"), *id.* at ¶¶ 200-06. Plaintiff seeks, *inter alia*, damages and

---

[1] Approximately three months after commencing this action, Plaintiff's counsel filed a separate lawsuit on behalf of seven other plaintiffs in connection with the events of August 20, 2024 at the OCCF, raising the same or similar claims against many of the same defendants, who are represented by the same defense counsel as here. *Claudio et al. v. Cnty. of Oneida et al.*, Case No. 25-cv-01615 (N.D.N.Y. filed Nov. 14, 2025). Given the factual and legal overlap in the cases and that the Rule 16 conference in each has been adjourned, the cases would appear to be ideal for consolidation. *See, e.g., R.W. Grand Lodge of Free & Accepted Masons of Pa. v. Meridian Cap. Partners, Inc.*, 634 F. App'x 4, 6 (2d Cir. 2015) ("A district court may consolidate actions when there are 'common question[s] of law or fact' pending before it. A party moving for consolidation 'must bear the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation.") (alteration in original) (first quoting Fed. R. Civ. P. 42(a); and then quoting *In re Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)).

declaratory and injunctive relief.  *Id.* at 66-67.[2]

## III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

---

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

9

## IV.    DISCUSSION

In the Motion, the Oneida County Defendants seek dismissal of certain of the claims and Defendants identified in the Complaint.  *See generally* Dkt. No. 12.  The Court begins with several issues that are not in dispute, *see, e.g.,* Dkt. No. 17 at 3, before reaching the matters on which the parties disagree.

The Motion argues that because the Complaint "does not contain any factual allegations against Investigator Miller that plausibly allege a viable claim against him[,]" Investigator Miller should be dismissed as a Defendant.  Dkt. No. 12-1 at 8.  In response, Plaintiff "consents to the dismissal of Investigator Miller as a Defendant."  Dkt. No. 16 at 10 n.3.  Based on the parties' agreement, the Court dismisses all claims against Investigator Miller.

The Motion also argues that the Complaint's claim for punitive damages against Oneida County and the Oneida County Defendants in their official capacities should be dismissed.  Dkt. No. 12-1 at 23.  Plaintiff again "consents to the dismissal of his claim for punitive damages against the County and Maciol and Kinderman in their official capacities[.]"  Dkt. No. 16 at 30 n.7.  Based on the parties' agreement, the Court dismisses Plaintiff's claim for punitive damages against Oneida County, Sheriff Maciol, and Chief Kinderman.  To the extent that the Complaint seeks punitive damages against any other Oneida County Defendant in that person's official capacity, the Court dismisses such claims as abandoned.  *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted).

The Motion further argues that the Complaint's ADA and Rehabilitation Act claims against Chief Kinderman and Captain Smith, in their individual capacities, should be dismissed.  Dkt. No.

10

12-1 at 26. Plaintiff "consents to the dismissal of the ADA and RA claims against Kinderman and Smith in their individual capacities[.]" Dkt. No. 16 at 31 n.8. Based again on the parties' agreement, the Court dismisses the ADA and Rehabilitation Act claims against Chief Kinderman and Captain Smith in their individual capacities. *See also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.") (citations omitted).

Finally, the Motion argues that all claims against the Oneida County Sheriff's Department should be dismissed. Dkt. No. 12-1 at 7. Plaintiff responds that he is not pursuing any claims against the Oneida County Sheriff's Department. Dkt. No. 16 at 10 n.3. Accordingly, to the extent the Complaint alleges any claims against the Oneida County Sheriff's Department, the Court dismisses such claims as abandoned. *Colbert*, 824 F. App'x at 11; *see also Walker v. Dean*, No. 26-cv-6177, 2026 WL 1045317, at *3 (W.D.N.Y. Apr. 17, 2026) ("'Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.' The [Niagara County Sheriff's Department] is considered an administrative arm of Niagara County and therefore is not subject to suit under § 1983.") (citations omitted).

## A. Section 1983

### i. Excessive Force and Failure to Intervene Claims

Plaintiff's first claim under Section 1983, for excessive force in violation of the Fourteenth Amendment, is against Oneida County, Albany County, Sheriffs Apple and Maciol, Chief Kinderman, Lieutenant Torrisi, Captain Smith, Sergeants Chapman and Paternoster, Officers Holbert, Hozanovic, Pease, and Spielmann, and the forty Doe Defendants. Dkt. No. 1 at ¶¶ 153-

11

60.   Plaintiff's second claim under Section 1983, for failure to intervene in violation of the Fourteenth Amendment, is against Oneida County, Sheriff Maciol, Chief Kinderman, Captain Smith, Sergeants Chapman and Paternoster, Officers Holbert, Hozanovic, Pease, and Spielmann, and the twenty Oneida County John Doe Officers, *id.* at ¶¶ 161-66.   The Oneida County Defendants argue that these claims should be dismissed as against (i) Sheriff Maciol, Chief Kinderman; (ii) Sergeant Chapman; and (iii) Officers Hozanovic, Pease,  and Spielmann, because the Complaint fails to plead the personal involvement of these Defendants in either alleged constitutional violation.   Dkt. No. 12-1 at 8-11.

Under Section 1983, "'[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' is 'liable to the party injured.'"  *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (alterations in original) (quoting 42 U.S.C. § 1983).

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir. 2020) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013)).  A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered."  *Keyes v. Venettozzi*, No. 18-cv-0372, 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (citation and quotation marks omitted).  In other words, "the actions or omissions attributable to each defendant must be the

proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citation omitted).

Nevertheless, "defendants need not actually 'pull the trigger,' or use force themselves, to be liable for excessive force as a direct participant." *Figuereo v. City of Saratoga Springs*, No. 23-cv-00922, 2025 WL 460784, at *9 (N.D.N.Y. Feb. 11, 2025). Rather, "[a] defendant who plans or directs an unreasonable use of force is liable for the resulting constitutional violation as a 'direct participant.'" *Id.* (quoting *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014)). "In this Circuit, a 'direct participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi*, 764 F.3d at 234; *see also Campbell v. City of Yonkers*, No. 19-cv-2117, 2023 WL 4867459, at *9 (S.D.N.Y. July 31, 2023).

"Additionally, '[p]ersonal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that he created a policy or custom under which the violation occurred.'" *Saratoga Black Lives Matter, Inc. v. City of Saratoga Springs*, No. 24-cv-00865, 2026 WL 710089, at *6 (N.D.N.Y. Mar. 13, 2026) (alteration in original) (quoting *Rindgen v. Cnty. of Broome*, No. 24-cv-1325, 2025 WL 2772080, at *17 (N.D.N.Y. Sept. 29, 2025)); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'") (collecting cases); *Dixon v. Farina*, No. 25-cv-00068, 2026 WL 482664, at *14 (N.D.N.Y. Feb. 20, 2026) (similar) (collecting cases). However, "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." *Rindgen*, 2025 WL 2772080, at *17 (citation omitted).

13

With respect to his excessive force and failure to intervene claims, Plaintiff first argues that he has sufficiently alleged the personal involvement of Chief Kinderman and Sheriff Maciol as both direct participants and responsible policymakers. Dkt. No. 16 at 10-12, 13-14. Accepting all well-pled allegations as true, Plaintiff's argument regarding the direct participation of these two Defendants is persuasive at this stage. As Plaintiff details, he alleges that Chief Kinderman: contacted Sheriff Apple on August 18, 2024 to request the deployment of Albany County CERT Officers at the OCCF; planned and directed the violent raid on August 20, 2024; briefed the Albany County CERT officers and the Oneida County SERT officers that morning, including purportedly instructing the latter to not interfere with the former during the alleged raid; and observed and oversaw portions of the subsequent raid. *Id.* at 11; *see also* Section II.B. The Complaint further alleges that body camera footage confirms Chief Kinderman's presence near Plaintiff during the purported raid. *See supra* Section II.B. As for Sheriff Maciol, he is alleged to have "approved and authorized" Chief Kinderman's decision to use Albany County personnel for the raid, as well as various aspects of the raid, including allowing Albany County personnel to participate in the raid without wearing body cameras and without using canines to detect contraband. Dkt. No. 16 at 11-12. Further, Sheriff Maciol is alleged to have been present at the OCCF on August 20, 2024, and to be pictured in a photograph with several dozen members of the Oneida County SERT and Albany County CERT teams shortly after the raid. Dkt. No. 1 at ¶¶ 10, 18. In short, at this stage, Plaintiff has sufficiently alleged the personal involvement of Chief Kinderman and Sheriff Maciol as direct participants in the purported raid.[3] Accordingly, the Complaint's excessive force and failure to intervene claims against Chief Kinderman and Sheriff Maciol are not subject to dismissal

---

[3] As a result, the Court does not address whether the Complaint alternatively alleges the personal involvement of Chief Kinderman and Sheriff Maciol as policymakers with respect to Plaintiff's first and second claims under Section 1983.

14

for lack of personal involvement, and the Court denies this portion of the Motion.

Plaintiff next argues that he has sufficiently alleged the personal involvement of Sergeant Chapman as a direct participant.[4]   Dkt. No. 16 at 12-13.   This argument is based on a single sentence in the sixty-eight page Complaint: that Sergeant Chapman was a supervisor "who helped muster the Oneida team for the raid and participated in searching pods."   Dkt. No. 1 at ¶ 23. Plaintiff proceeds to argue that because Sergeant Chapman was a supervisor and present at the OCCF on August 20, 2024, he is responsible for the conduct of other correction officers throughout the facility.   Dkt. No. 16 at 12-13; *but see Keyes*, 2022 WL 991402, at *6 ("[A] defendant in a Section 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a high position of authority.") (second alteration in original) (first quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); and then citing *Grullon*, 720 F.3d at 138); *Raven v. N.Y. State Dep't of Env't Conservation*, No. 25-cv-01624, 2026 WL 265965, at *6 (N.D.N.Y. Feb. 2, 2026) ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*. . . . 'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983.") (alterations in original) (quoting *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003)).   While Plaintiff alleges that he was in one of the five pods searched at the OCCF, he does not allege that Sergeant Chapman was ever present in, or aware of events in, that particular pod—as the Oneida County Defendants correctly note.  Dkt. No. 17 at 4; *see also* Dkt. No. 12-1 at 10-11 ("Plaintiff alleges no facts that could plausibly suggest Sgt. Chapman applied any force to plaintiff nor does plaintiff allege that Sgt. Chapman observed the alleged assault nor does he

---

[4] In contrast, Plaintiff does not argue that he has alleged Sergeant Chapman's personal involvement as a policymaker.  Dkt. No. 16 at 12-13.

assert that Sgt. Chapman was present in Pod 4 at any point during the purported assault."). Thus, Plaintiff's cursory allegations do not plausibly suggest that Sergeant Chapman used or directed excessive force against Plaintiff in Pod 4 on August 20, 2024, nor that Sergeant Chapman failed to intervene in the use of such force. *Tangreti*, 983 F.3d at 618. As a result, the Court grants this portion of the Motion and dismisses these two claims against Sergeant Chapman.

Finally, Plaintiff argues that he has adequately pled a failure to intervene claim against Officers Hozanovic, Pease, and Spielmann, based on his allegations that each officer was present in Pod 4 during Plaintiff's assault and had the opportunity to intervene, but failed to do so. Dkt. No. 16 at 14-15. At this early stage, these allegations are sufficient for this claim to proceed to discovery. Accordingly, the Court denies this portion of the Motion as to Plaintiff's failure to intervene claims against these three Defendants.[5]

### ii. Retaliation

Plaintiff's third claim pursuant to Section 1983, for retaliation in violation of the First Amendment, is against Oneida County, Officer Capra, and Officer Giambattista. Dkt. No. 1 at ¶¶ 167-71. The Oneida County Defendants argue that this claim should be dismissed (i) as against Officers Capra and Giambattista, because the alleged retaliation did not constitute an adverse action; and (ii) as against Oneida County, because Plaintiff has failed to plausibly allege a *Monell* claim. Dkt. No. 12-1 at 12-16.

---

[5] To the extent that the Complaint alleges an excessive force claim against Officers Hozanovic, Pease, or Spielmann, however, any such claim is dismissed as abandoned. *Compare* Dkt. No. 12-1 at 11 ("Plaintiff's excessive force claims against Officers Pease, Hozanovic, and Spielmann must be dismissed because Plaintiff's complaint does not allege that Officers Pease Hozanovic, and Spielmann used any excessive force against him."), *with* Dkt. No. 16 at 14 (arguing only that "[Plaintiff]'s allegations plead a plausible failure to intervene claim against Defendants Pease, Hozanovic, and Spielmann"); *see also Colbert*, 824 F. App'x at 11.

16

Case 9:25-cv-01135-AMN-MJK    Document 22    Filed 06/16/26    Page 17 of 28

"To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). "Courts must approach prisoner retaliation claims with 'skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Dolan*, 794 F.3d at 295). "Moreover, 'claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.' For these reasons, we require that prisoner retaliation claims be 'supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Id.* at 298-99 (first quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001); and then quoting *Dolan*, 794 F.3d at 295).

The parties' dispute on this claim boils down to whether Plaintiff has adequately alleged an adverse action by Officers Capra and Giambattista. *See, e.g.,* Dkt. No. 12-1 at 12-13, Dkt. No. 16 at 15-16. The Second Circuit recently reiterated the analysis applicable to this element:

> To constitute "adverse action," conduct must be of the "type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." We "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.'" "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'"

*Walker*, 130 F.4th at 298 (first quoting *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020); then quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); then quoting *Hayes*, 976 F.3d at 272; and then quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)).

As detailed by Plaintiff, the Complaint plausibly alleges adverse action. Dkt. No. 16 at 16. First, in response to "dozens of incarcerated individuals fil[ing] grievances or written complaints, all describing a similar pattern of unprovoked excessive force" and "pleading for medical attention and outside investigation" in the seventy-two hours after the raid, Dkt. No. 1 at ¶ 78, Officers Capra and Giambattista allegedly "issued threats to Mr. McNair and other incarcerated individuals to call the Albany County CERT back to OCCF to inflict more violence upon the incarcerated individuals[,]" *id.* at ¶ 29, if they "continued to complain or make trouble[,]" *id.* at ¶ 82. Plaintiff further alleges that "[i]n the days immediately following August 20, Defendants Oneida Officers Capra and Giambattista went through the housing units and issued a chilling warning to the incarcerated individuals: '*You better relax before we go get Albany County again.*'" *Id.* at ¶ 82. Second, Plaintiff alleges that when he nonetheless submitted a grievance, false disciplinary charges were filed against him in "an effort to discredit Mr. McNair and punish him for speaking out." *Id.* at ¶ 83. Because Plaintiff's retaliation allegations against Officers Capra and Giambattista are sufficient at this stage, the Court denies this portion of the Motion. *See, e.g., Walker*, 130 F.4th at 299 ("We have held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation.") (quoting *Hayes*, 976 F.3d at 273).

With respect to the portion of Plaintiff's retaliation claim against Oneida County, "§ 1983 does not impose vicarious liability on a municipality for the actions of its employees." *Alexander v. City of Syracuse*, 132 F.4th 129, 160 (citing *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023)). Instead, "[t]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its

18

employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (second alteration in original) (first quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); and then citing *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978)). As to the first element, a plaintiff can establish the existence of an official policy or custom in four ways:

> (1) a formal policy endorsed by the municipality; (2) actions directed by the government's "authorized decisionmakers" or "those who establish governmental policy[;]" (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a "constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees[.]"

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (second and third alterations in original) (first citing *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); then quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); then citing *Turpin*, 619 F.2d at 199; and then quoting *City of Canton v. Harris*, 489 U.S. 378, 380 (1989)).

The Oneida County Defendants first argue that Plaintiff's *Monell* claim should be dismissed because he has not plausibly alleged an underlying constitutional violation with respect to his retaliation claim. Dkt. No. 12-1 at 13. Given the Court's decision above with respect to Officers Capra and Giambattista, this argument fails.

The Oneida County Defendants next argue that the lawsuits concerning Chief Kinderman and the OCCF cited in the Complaint do not plausibly allege a policy or custom of retaliation. Dkt. No. 12-1 at 14-16. Plaintiff responds that the three lawsuits cited in his Complaint are sufficient to allege such a policy or custom. Dkt. No. 16 at 16-17.

The Court agrees with Plaintiff. "A plaintiff may [ ] plead the existence of *de facto* customs or policies 'by citing to complaints in other cases that contain similar allegations.'" *Campo v. City*

19

*of New York*, No. 19-cv-04364, 2022 WL 970730, at *12 (E.D.N.Y. Mar. 31, 2022) (quoting *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)).  Further, "the pre-discovery pleading standard for a custom or practice is not a high a bar."  *DiPippo v. Cnty. of Putnam*, No. 17-cv-7948, 2019 WL 1004152, at *9 (S.D.N.Y. Feb. 28, 2019).  The Complaint cites other sufficiently similar lawsuits against Chief Kinderman and the OCCF alleging retaliation—including the denial of grievances, subsequent pretextual disciplinary sanctions, and the denial of medical care—and further alleges a policy of suppressing grievances within the OCCF.  *See, e.g.,* Dkt. No. 1 at ¶¶ 124-26, 133.  Accepting the Complaint's well-pled allegations as true at this stage, the Court denies this portion of the Motion.

### iii.    Deliberate Indifference

Plaintiff's fourth and final claim pursuant to Section 1983, for deliberate indifference to serious medical needs, is against Oneida County and Chief Kinderman.  *Id.* at ¶¶ 184-91.  The Oneida County Defendants primarily argue that this claim should be dismissed because Plaintiff does not plausibly allege Chief Kinderman's deliberate indifference, nor that Oneida County has a policy or custom of denying medical treatment.  Dkt. No. 12-1 at 19-21.

Because Plaintiff was in custody at the OCCF as a pretrial detainee, this claim is "governed by the Due Process Clause of the Fourteenth Amendment, rather than Cruel and Unusual Punishments Clause of the Eight[h] Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted); *see also id.* ("A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'"") (alteration in original) (citation omitted).  To establish such a claim, "the plaintiff must show that: (1) he had a 'serious medical need'; and (2) the defendant 'acted with deliberate indifference.'"  *Loveall v.*

20

*Walker*, 807 F. Supp. 3d 148, 161 (N.D.N.Y. 2025) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019)).  "Under the Fourteenth Amendment an official does not act in a deliberately indifferent manner toward an arrestee unless the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew, or should have known*, that the condition posed an excessive risk to health or safety." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Darnell*, 849 F.3d at 35).

As Plaintiff details, Chief Kinderman and others allegedly "knew or should have known of the risk from Mr. McNair's dislocated shoulder and recovery status, yet delayed care pre-raid and assaulted him during it, recklessly disregarding the risk of harm."  Dkt. No. 16 at 23 (citations omitted).  The Complaint alleges that Plaintiff was housed in a protective custody unit specifically for "vulnerable and medically disadvantaged detainees" who were recovering from injuries and required "heightened security and a more strenuous duty to protect."  Dkt. No. 1 at ¶ 40.  Plaintiff contends that "the pre-planned raid targeting vulnerable, recovering detainees like Mr. McNair, using force, and ignoring medical status despite ample opportunity to intervene, plausibly alleges recklessness."  Dkt. No. 16 at 23.  The Complaint also alleges that Chief Kinderman, as a policymaker, "oversaw systematic medical delays and was on notice of prior neglect and racialized violence patterns yet failed to implement training or policies to address these issues."  *Id.* at 24 (citing Dkt. No. 1 at ¶¶ 2, 18, 61-63, 68, 128-33).  These allegations are sufficient, at this stage, to plausibly allege both Chief Kinderman's deliberate indifference to Plaintiff's serious medical needs, as well as a broader custom or policy by Oneida County.  *Loveall*, 807 F. Supp. 3d at 161; *see also Norton v. Town of Islip*, 678 F. App'x 17, 21 (2d Cir. 2017) ("[A] plaintiff can establish that his constitutional right was violated because of a single decision by a municipal official who

21

is 'responsible for establishing final policy with respect to the subject matter in question.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Accordingly, the Court denies this portion of the Motion.

### B.  Section 1985

Plaintiff's claim pursuant to Section 1985(3) is that Sheriffs Apple and Maciol, Chief Kinderman, Captain Smith, Lieutenant Torrisi, Sergeants Chapman and Paternoster, Officers Capra and Giambattista, and the Doe Defendants conspired to violate his civil rights (as well as those of others) based on race. Dkt. No. 1 at ¶¶ 172-77. The Oneida County Defendants primarily argue that this claim should be dismissed because Plaintiff has not plausibly alleged a conspiracy motivated by discriminatory animus. Dkt. No. 12-1 at 16-18. The Court finds this argument unpersuasive given Plaintiff's allegations.[6]

> To state a civil rights conspiracy claim under Section 1985(c), a plaintiff must allege:
>
> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (quoting *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Dolan*, 794 F.3d at 296 (citations omitted).

As detailed earlier, Plaintiff alleges that Chief Kinderman contacted Albany County's Sheriff; that Albany County personnel then traveled across several counties to Oneida County, where personnel from both counties proceeded to conduct a coordinated, racially targeted jail-wide

---

[6] This claim nonetheless fails against Sergeant Chapman, who is not alleged to be personally involved with relevant events at all, as detailed earlier. *See supra* Section IV.A.i.

22

raid at the OCCF, during which Oneida County personnel facilitated Albany County personnel in targeting housing units with predominantly Black and Latino individuals and assaulting those individuals, while largely sparing the housing unit with predominantly white individuals. *See supra* Section II.B; *see also Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 319 (N.D.N.Y. 2023) ("A conspiracy, for these purposes, need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'") (citations omitted). As Plaintiff notes, he also alleges that several Defendants made statements during the raid from which racial animus can be reasonably inferred at this stage. Dkt. No. 16 at 20. Finally, Plaintiff alleges that an Oneida County policymaker approved the use of Albany County personnel for the raid, and subsequently approved the conduct of both Oneida County and Albany County personnel during the raid. *See, e.g.,* Dkt. No. 1 at ¶ 18. Because these allegations sufficiently allege a civil rights conspiracy motivated by racial animus, the Court denies this portion of the Motion.

## C. Section 1986

Plaintiff's Section 1986 claim is that Sheriffs Apple and Maciol, Chief Kinderman, Sergeant Paternoster, and any supervisory John Doe Oneida County Officers neglected to prevent the conspiracy just discussed. Dkt. No. 1 at ¶¶ 178-83.

The Oneida County Defendants argue only that without a viable predicate claim under Section 1985(3), this derivative claim under Section 1986 must also be dismissed. Dkt. No. 12-1 at 18; *see also Rizk v. City of New York*, 462 F. Supp. 3d 203, 227 (E.D.N.Y. 2020) ("In other words, a 'claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil rights may not exist absent a viable section 1985 claim.") (quoting *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 356 (N.D.N.Y. 2014)). Given the Court's decision above with respect to Plaintiff's Section 1985(3)

23

claim, this argument fails.  *Lalonde*, 662 F. Supp. 3d at 322.  Accordingly, the Court denies this portion of the Motion.

### D.  ADA and Rehabilitation Act Claims

Plaintiff's ADA claim is against Oneida County, Chief Kinderman, and Captain Smith. Dkt. No. 1 at ¶¶ 207-12.  Plaintiff's Rehabilitation Act claim is against Oneida County.  *Id.* at ¶¶ 213-20.

The parties agree that "[w]hen brought together, claims under these statutes may be treated identically."  *Montalvo v. New York*, No. 24-cv-00445, 2025 WL 2457084, at *9 (N.D.N.Y. Aug. 27, 2025) (quoting *Hilton v. Wright*, 673 F.3d 120, 128 n.7 (2d Cir. 2012)); *see also* Dkt. No. 12-1 at 23-24; Dkt. No. 16 at 30.  To establish a prima facie case of discrimination under either the ADA or the Rehabilitation Act, a plaintiff "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant]'s services, programs, or activities or [the defendant] otherwise discriminated against him by reason of his disability."  *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)); *see also Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020).

The Oneida County Defendants primarily argue that Plaintiff's discrimination claims fail at the third prong of this analysis, as the Complaint does not plausibly allege that Plaintiff was discriminated against on account of his disability.  Dkt. No. 12-1 at 24-26.  Plaintiff responds that he has alleged that Oneida County personnel denied him access to medical care as a result of some kind of animus toward him, but that "it is unknown" whether this animus "was motivated by his opioid use disorder and mental health conditions, by some other personal characteristic, or by a

desire to further demean and dehumanize him after the assault of August 20, 2024." Dkt. No. 16 at 31 & n.9. In reply, Defendants argue that this admission is fatal to Plaintiff's discrimination claims. Dkt. No. 17 at 11.

The Court agrees with Defendants. *See, e.g., Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021) ("At its core, the issue here is not whether [plaintiff] was denied medical services *because* she has a disability. Instead, her claim relates solely to whether she received adequate medical treatment in [ ] custody *for* her disability, and such a claim is not cognizable under the ADA. To hold otherwise would allow inmates to litigate in federal court virtually every medical malpractice claim arising in a custodial setting under the auspices of the ADA."). The Complaint does not plausibly allege that the purportedly inadequate medical care Plaintiff received was the result of discrimination. Indeed, "[w]hen it comes to supporting that assertion, Plaintiff relies on the same underlying allegations of inadequate care. [He] does not point to discriminatory interactions, disparate treatment, or any other typical indicia of discrimination." *Freudenberg v. Cnty. of Orange*, No. 23-cv-847, 2024 WL 4307176, at *7 (S.D.N.Y. Sept. 25, 2024); *see generally* Dkt. No. 16 at 31. And "claims of inadequate medical treatment, 'even when made by a person with a serious disability, does not state a claim under the ADA.'" *Freudenberg*, 2024 WL 4307176, at *7 (citations omitted). "As a result, plaintiff's claims are deficient because he fails to allege facts which plausibly suggest that he was treated differently because of his disability." *Sloley v. NYS DOCCS*, No. 23-cv-1469, 2024 WL 1079886, at *11 (N.D.N.Y. Jan. 19, 2024) (collecting cases). And "[b]ecause Title II targets discrimination 'by reason of' disability, courts routinely dismiss inmate ADA claims of inadequate medical treatment lacking allegations that the inmate 'was treated differently because of his or her disability.'" *Freudenberg*, 2024 WL 4307176, at *7 (quoting *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010))

25

(collecting cases).  Accordingly, the Court grants this portion of the Motion and dismisses Plaintiff's ADA and Rehabilitation Act claims.

### E.  New York State Law Claims

Plaintiff brings claims against Oneida County and Albany County for assault, battery, and IIED under New York State law.  Dkt. No. 1 at ¶¶ 192-206.  The Motion primarily argues that Plaintiff's assault, battery, and IIED claims against Oneida County are duplicative of, *inter alia*, his excessive force claim under Section 1983 and should be dismissed.  Dkt. No. 12-1 at 22-23. Plaintiff asserts various theories for why such claims could be non-duplicative, but ultimately fails to identify any non-duplicative allegations in his Complaint.  Dkt. No. 16 at 27-30.  Instead, Plaintiff contends that he "must be allowed to proceed against the County itself . . . to ensure that, if he prevails, he wins a judgment against a party that can satisfy it."  *Id.* at 29.

As an initial matter, pursuing an excessive force claim under Section 1983 does not foreclose also pursuing assault and battery claims under New York State law.  *See, e.g., Tardif*, 991 F.3d at 410 ("The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'") (citation omitted).  Rather, "[u]nder New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'"  *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (citations omitted); *see also Cheikhaoui v. City of New York*, No. 22-cv-08855, 2023 WL 5917646, at *9 (S.D.N.Y. Sept. 11, 2023) (applying New York State law to dismiss duplicative tort claim in Section 1983 action).  Here, the Court agrees with the Oneida County Defendants that the Complaint sets forth the same facts for Plaintiff's assault and battery claims as those giving rise to Plaintiff's excessive force claims, and seeks the same relief.  *See, e.g.,* Dkt. No. 17 at 10-11.  As a result, these claims are duplicative.  *See, e.g., Woods v. Szakacs*, No. 15-cv-027, 2017 WL

26

11567918, at *1-2 (N.D.N.Y. May 25, 2017) (dismissing, *inter alia*, plaintiff's New York State law claims for assault and battery as duplicative of his Section 1983 excessive force claim); *Blot v. Town of Colonie*, No. 14-cv-0991, 2017 WL 61943, at *22 (N.D.N.Y. Jan. 5, 2017) (dismissing plaintiff's New York State law claims for assault and battery as "redundant of his federal excessive force claim").

Plaintiff's IIED claim is similarly duplicative of his excessive force, retaliation, and deliberative indifference claims under Section 1983. *See, e.g., Blot*, 2017 WL 61943, at *21 (dismissing plaintiff's New York State law claims for IIED and negligent infliction of emotional distress because "the claim[s] are premised on the same conduct giving rise to his federal excessive force claim, [and] are duplicative of that federal excessive force claim") (collecting cases); *Caravalho v. City of New York*, No. 13-cv-4174, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (dismissing plaintiff's New York State law claims for IIED and negligent infliction of emotional distress because "any resulting emotional damage is entirely subsumed by [plaintiff]'s common law assault and battery claim and his federal excessive force claim"); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2015) ("[U]nder New York law, an intentional infliction tort may 'be invoked only as a last resort,' 'to provide relief in those circumstances where traditional theories of recovery do not[.]' Thus, the New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.' All four Appellate Division courts have answered the question and held that it cannot.") (citations omitted) (collecting cases).

Accordingly, the Court grants this portion of the Motion and dismisses Plaintiff's assault, battery, and IIED claims against Oneida County. *Deutsche Bank*, 810 F.3d at 869 ("Thus, because the facts underlying both claims are identical and the [plaintiff] seeks identical remedies, the claim

27

. . . was properly dismissed as duplicative.").

## V.       CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Oneida County Defendants' motion to dismiss, Dkt. No. 12, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff's (i) first claim for excessive force under Section 1983, as against Sergeant Chapman, Officer Hozanovic, Officer Pease, and Officer Spielmann; (ii) second claim for failure to intervene under Section 1983, as against Sergeant Chapman; (iii) tenth claim under the ADA; (iv) eleventh claim under the Rehabilitation Act; (v) seventh claim for assault under New York State law; (vi) eighth claim for battery under New York State law; (vii) ninth claim for IIED under New York State law; and (viii) any claims for punitive damages against the Oneida County Defendants in their official capacities, are **DISMISSED**; and the Court further

**ORDERS** that Sergeant Chapman and Investigator Miller are **DISMISSED** as defendants in this action; and the Court further

**ORDERS** that the Oneida County Defendants' motion to dismiss, Dkt. No. 12, is otherwise **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 16, 2026
     Albany, New York

Anne M. Nardacci
U.S. District Judge

28